UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON MIKULA,<br>1204 Virginia Avenue<br>Libertyville, IL 60048<br><br>      Plaintiff,<br><br>v.<br><br>BOARD OF GOVERNORS OF THE<br>FEDERAL RESERVE SYSTEM<br>20th Street and Constitution Avenue NW<br>Washington, DC 20551<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Plaintiff Jason Mikula ("Mikula" or "Plaintiff") brings this action against Defendant Board of Governors of the Federal Reserve System ("FRB" or "Defendant") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), including providing access to records maintained by FRB.

2. The records at issue, including but not limited to communications to and from FRB, pertain to the April 2024 bankruptcy of Synapse Financial Technologies, Inc. ("Synapse") and related freezing of funds.

3. Synapse was a non-bank technology firm that served as an intermediary between approximately 100 financial technology platforms and four partner banks.

4. Synapse opened deposit accounts on behalf of the financial technology platforms' end users. It also processed financial transactions and managed account statements and ledgers for the financial technology platforms and their end users.

1

5. The financial technology platforms used four banks to maintain their end users' funds. One of those partner banks was Evolve Bank & Trust ("Evolve"), which FRB regulates.

6. On April 22, 2024, Synapse filed for Chapter 11 bankruptcy. *See In re: Synapse Fin. Techs., Inc.*, No. 1:24-BK-10646 (C.D. Cal.), ECF No. 1. On or around May 11, 2024, as described in the bankruptcy filings, Evolve froze Synapse-related funds it held and ceased processing payments for funds held at other partner banks. These funds remained frozen for months, and many depositors still, to this day, have received only pennies on the dollar or nothing at all of funds they believed to be safe and insured by the Federal Deposit Insurance Corporation ("FDIC").

7. On June 20, 2024, Synapse's Chapter 11 Trustee, former FDIC Chair Jelena McWilliams ("McWilliams"), wrote a letter to the leaders of FRB, FDIC, Office of the Comptroller of the Currency, the Securities and Exchange Commission, and the Financial Industry Regulatory Authority. *See id.*, ECF No. 287 at 16-19. She wrote, "Synapse's bankruptcy has left tens of thousands of end-users of financial technology platforms that were customers of Synapse stranded without access to their funds." *Id.* at 17. The estimated shortfall between the amount of cash held by the banks that partnered with Synapse and the value of the remaining trial balance is between $65 million and $85 million. *See id.* In the letter, McWilliams noted that the "impact of Synapse's bankruptcy on end-users has been devastating" and that she understood that "without these funds, many end-users are unable to pay for basic living expenses and food." *Id.* at 18. Multiple news articles from then and now corroborate Williams' report.[1]

---

[1] *See, e.g.*, Leo Schwartz and Allie Garfinkle, The spectacular Synapse collapse: The ugliest divorce in fintech left $200 million in customer money frozen – and shows the risks of financial apps, Fortune (Mar. 7, 2025), https://fortune.com/2025/03/07/synapse-evolve-mercury-

8. McWilliams asked the leaders to communicate with end users about the status of Synapse's bankruptcy proceedings and the hopeful relocation of their funds. *See id.* at 17-18. There had been a dearth of publicly released information in the two months since Synapse's filing. While FRB's response expressed "sincere concern" and it was "strongly encourag[ing]" the banks they supervise to address the severe consumer harm arising from the situation, that harm continues to the present. *Id.*, ECF No. 304 at 18-19.

9. The Synapse bankruptcy remains a significant public concern. On September 17, 2024, Travis Hill, then-Vice Chairman (and now Acting Chairman) of the FDIC ("Chairman Hill"), mentioned Synapse in a statement supporting a new FDIC rule regarding pass-through protection. He said, "While the Synapse story is still unfolding, these problems could have been identified much sooner if the partner banks maintained better records and conducted frequent, routine reconciliations."[2]

10. On April 8, 2025, Elizabeth Warren, Ranking Member of the Senate Committee on Banking, Housing, and Urban Affairs ("Senator Warren"), wrote a letter to FRB Member Michelle Bowman, the nominee for FRB's Vice Chair for Supervision ("Governor

---

bankruptcy-lawsuits/; Hugh Son, 'I have no money': Thousands of Americans see their savings vanish in Synapse fintech crisis, CNBC (last updated Nov. 22, 2024), https://www.cnbc.com/2024/11/22/synapse-bankruptcy-thousands-of-americans-see-their-savings-vanish.html; Yulia Chernova, Why the Synapse Bankruptcy Has the Fintech World on Edge, Wall Street Journal (July 15, 2024), https://www.wsj.com/articles/why-the-synapse-bankruptcy-has-the-fintech-world-on-edge-f83cbe6d;

[2] Travis Hill, Notice of Proposed Rulemaking on Custodial Deposit Accounts with Transaction Features and Prompt Payment of Deposit Insurance to Depositors, FDIC (Sept. 17, 2024), https://www.fdic.gov/news/speeches/2024/notice-proposed-rulemaking-custodial-deposit-accounts-transaction-features-and.

Bowman").[3]   Senator Warren noted that Governor Bowman chairs FRB's Committee on Consumer and Community Affairs, "which is responsible for overseeing consumer protection for small banks exempt from the [Consumer Financial Protection Bureau]'s supervision and enforcement jurisdiction."[4]   Senator Warren also noted that FRB had "failed to prevent the disastrous blow-up of its partnership with [Synapse], leaving consumers without access to their funds for months."[5]

11. By November 2024, CNBC reported that, even after six months of court-mediated efforts to locate the missing funds, thousands of Americans were still "bearing the brunt" of the shortfall and would receive little or nothing from their savings accounts.[6]

12. McWilliams indicated in an April 10, 2025, status report that, as the estate has no assets, she will move to dismiss the case, or, alternatively, convert it to a Chapter 7 liquidation. This means the bankruptcy process is likely to end soon, but "many end users still have not received their expected amount of funds[,] and these amounts are subject to ongoing appeals processes and litigation." *In re: Synapse Fin. Techs., Inc.*, No. 1:24-BK-10646 (C.D. Cal.), ECF No. 500 at 4.  Furthermore, unanswered questions remain about how the Synapse bankruptcy happened and who is responsible.

13. McWilliams herself recognized that the system designed to protect depositors has failed in a December 2024 hearing. Moved to tears by the situation, McWilliams told the court,

---

[3] Letter from Senator Elizabeth Warren to Governor Michelle Bowman (Apr. 8, 2025), available at https://www.banking.senate.gov/newsroom/minority/ahead-of-hearing-warren-presses-bowman-on-helping-wall-street-over-working-people.

[4] *Id*.

[5] *Id*.

[6] Son, *supra* n.2.

"The system has failed so many end users in so many ways" and that she found the situation "incredibly demoralizing" and "personally painful."[7]

14. More generally, legislators have increasingly acknowledged the importance and value of federal banking regulators being more transparent and accountable. French Hill, Chairman of the House Financial Services Committee ("Congressman Hill"), has emphasized the importance of transparency and accountability. In February 2025, Congressman Hill said, "This Committee will seek to promote regulatory fairness, transparency, and right-sizing; encourage bank health, sound growth, and competition; and improve access to funding and capital for our community banks."[8]

15. During the 118th Congress, Congressman Hill sponsored H.R. 8071, the Fair Audits and Inspections of Regulators' Exams Act, which seeks to increase the transparency and accountability of bank regulators.[9]

16. Tim Scott, who chairs the Senate Banking Committee ("Senator Scott"), has also emphasized the importance of transparency and accountability. He has been a vocal critic of the use of "reputational risk," arguing it can be "weaponized."[10] Senator Scott

---

[7] Jason Mikula, Regulators Should Conduct "Material Loss Review" of Synapse Disaster, Fintech Bus. Weekly (Dec. 8, 2024), https://fintechbusinessweekly.substack.com/p/regulators-should-conduct-material.

[8] In First Full Committee Hearing, Financial Services Examines Opportunities to Make Community Banking Great Again, House Comm. on Fin. Servs. (Feb. 5, 2025), https://financialservices.house.gov/news/documentsingle.aspx?DocumentID=409456.

[9] See H.R.8071 - Fair Audits and Inspections for Regulators' Exams Act, Congress.gov, https://www.congress.gov/bill/118th-congress/house-bill/8071.

[10] Scott Leads Effort to Combat Debanking, U.S. Sen. Comm. on Banking, Hous., and Urb. Affs. (Mar. 6, 2025), https://www.banking.senate.gov/newsroom/majority/scott-leads-effort-to-combat-debanking.

introduced the Financial Integrity and Regulation Management Act, which would prohibit regulators from using "reputational risk" as a component of supervision.[11]

17. Cynthia Lummis, who also sits on the Senate Banking Committee, echoed Congressman Hill's and Senator Scott's calls for transparency and accountability. She said earlier this year, "Americans deserve a transparent regulatory framework that fosters innovation in digital assets instead of smothering it with government overreach."[12]

18. Given the Synapse bankruptcy's ripple effects, which are felt to this day, the public has a significant interest in knowing what FRB knew about Synapse's financial problems; when it learned of them; whether FRB took any action to prevent Synapse's bankruptcy; and if so, what those actions were.

19. Both the public generally and the end users specifically have a significant interest in learning where the unaccounted-for funds are. The size of the shortfall remains unknown, and several lawsuits from end users are just getting started.[13]

20. In recognizing these significant interests, Mikula filed an original FOIA request and later revised his FOIA request as described herein.

## PARTIES, JURISDICTION, AND VENUE

21. Plaintiff Jason Mikula is the Managing Director of Fintech Business Weekly, a news media entity focused on the financial services industry.

---

[11] *Id.*

[12] *Id.*

[13] *See* Jason Mikula, As One Banking-as-a-Service Bankruptcy Ends, Another Begins, Fintech Bus. Weekly (Apr. 13, 2025), https://fintechbusinessweekly.substack.com/p/as-one-banking-as-a-service-bankruptcy.

22. Defendant FRB is a federal administrative agency within the meaning of 5 U.S.C. § 552(f)(1), with its principal place of business located at 20th Street and Constitution Avenue NW in Washington, DC 20551. Upon information and belief, the FRB has possession, custody, and control of the records, within the meaning of 5 U.S.C. § 552(f)(2), to which Mikula seeks access.

23. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

24. Venue is proper in this district and division pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## FACTS

25. On July 19, 2024, Mikula submitted a FOIA request to FRB. *See* Fed. Reserve Bd. FOIA Portal Request No. 2024-00887 (July 19, 2024), attached as **Exhibit A** ("Original FOIA Request").

26. The Original FOIA Request sought access to "Any records, including but not limited to emails, meeting notes, calendar entries, presentations, and the like, relating to 'Synapse,' 'Synapse Financial Technologies,' and 'Synapse Brokerage' at the Federal Reserve Board and the St. Louis Federal Reserve, specifically" from January 1, 2023 to July 19, 2024. *Id.* at 1.

27. Mikula requested expedited processing of the Original FOIA Request because "the Synapse bankruptcy has left end users – average, everyday Americans, without access to their funds." *Id.* at 2.

28. On July 26, 2024, FRB denied Mikula's request for expedited processing without prejudice.

7

29. On July 29, 2024, Mikula appealed the denial of expedited processing.

30. The appeal cited, among other things, a letter from the Senate Banking Committee to Synapse executives stating that "the Synapse bankruptcy has … caused hardworking Americans and small businesses to be deprived access to their own money."[14]

31. On August 12, 2024, FRB granted Mikula's request for expedited processing on a discretionary basis.

32. Between September 4, 2024 and January 10, 2025, Mikula received five letters from FRB stating that it needed additional time to process the Original FOIA Request.

33. On January 14, 2025, Mikula emailed FRB seeking a determination of his Original FOIA Request.

34. On January 16, 2025, FRB sent Mikula a letter stating it could not "process [his Original FOIA Request] as written because it [was] vague and lack[ed] the specificity necessary to allow [FRB] staff to identify responsive records." Jan. 16, 2025 Letter from Benjamin W. McDonough to Jason Mikula, attached as **Exhibit B**.

35. The January 16 letter invited Mikula to revise his Original FOIA Request by February 18, 2025. *See id.* at 2.

36. On February 18, 2025, Mikula submitted a revised FOIA Request. *See* Fed. Reserve Bd. FOIA Portal Request No. 2024-00887 (Feb. 18, 2025), attached as **Exhibit C** ("Revised FOIA Request").

---

[14] Brown, Wyden, Baldwin, Fetterman Urge Synapse's Owners and Partners to Immediately Make Customers' Deposits Available, U.S. Sen. Comm. on Banking, Hous., and Urb. Affs. (July 1, 2024), https://www.banking.senate.gov/newsroom/majority/brown-wyden-baldwin-fetterman-urge-synapses-owners-and-partners-to-immediately-make-customers-deposits-available.

8

37. Mikula's Revised FOIA Request sought access to and copies of three categories of documents:

    a. Emails, presentations, training materials, meeting notes, calendar entries, transcripts, and complaints that contain the term "Synapse," "Synapse Financial Technologies," and/or "Synapse Brokerage" that are not covered by [a FOIA exception]; generated or held at the Federal Reserve Board and/or the St. Louis Federal Reserve; including but not limited to within the Federal Reserve's "Novel Activities Supervision Program," the "Community & Regional Financial Institutions" programs/portfolio, the Division of Supervision and Regulation, Division of Consumer and Community Affairs, Office of the Chief Operating Officer, Division of Information Technology, Legal Division, Division of Management, Office of Inspector General, the Committee on Board Affairs, the Committee on Consumer and Community Affairs, and the Committee on Supervision and Regulation; and the St. Louis Federal Reserve Office of the President;

    b. Civil investigative demand(s) related to "Synapse," "Synapse Financial Technologies," or "Synapse Brokerage," and non-exempt documents produced in response to any such civil investigative demand; and

    c. All communications, formal and informal enforcement actions, including but not limited to cease and desist orders, written agreements, PCA Directives, removal and prohibition orders, and orders assessing civil money penalties, commitments, board resolutions, memoranda of understanding, matters requiring attention, and matters requiring immediate attention related to "Synapse," "Synapse Financial Technology," and/or "Synapse Brokerage" that are not exempt as Confidential Supervisory Information.

38. On March 18, 2025, FRB sent Mikula a letter stating it was "extending the period for [its] response until April 1, 2025, in order to consult with two or more components of the Board having a substantial interest in the determination of the [Revised FOIA Request]." Mar. 18, 2025 Letter from FRB to Jason Mikula, attached as **Exhibit D**.

39. To date, Mikula has not received any correspondence substantively responding to his Revised FOIA Request despite the requirement of 5 U.S.C. § 552(a)(6)(A) that an agency respond within twenty (20) working days, including by providing detail on the scope of the records the agency intends to produce or withhold, the reasons for making that

|   |   |
|---|---|
| | determination, and an explanation of the process by which a requester can administratively appeal that determination. |
| 40. | To date, FRB also has not provided Mikula notice that "unusual circumstances" warrant a failure to comply with the statutory deadline with respect to the Revised FOIA Request. |
| 41. | Mikula has been required to expend resources to prosecute this action. |

## LEGAL STANDARD

42. FOIA requires a federal administrative agency to promptly make available requested, non-exempt agency records in response to a request that (a) reasonably describes such records and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]" 5 U.S.C. § 552(a)(3)(A); *see also* 12 C.F.R. §§ 261.11-12.

43. If an FRB-related FOIA request does not meet all statutory requirements, the agency may return the request and provide the requestor an opportunity to perfect it. *See* 12 C.F.R. § 261.11(c).

44. FOIA requires an agency to respond to a valid request within twenty (20) days (exempting Saturdays, Sundays, and federal holidays) (hereinafter "working days") upon receipt of such request, including notifying the requestor immediately of its determination, the reasons therefor, and the right to appeal any adverse determination. 5 U.S.C. § 552(a)(6)(A)(i); *see also* 12 C.F.R. §§ 261.12(e), 261.13(e).

45. In certain circumstances, an agency may instead provide notice to the requester that "unusual circumstances" merit additional time—up to an additional ten (10) working days—to respond to the request. 5 U.S.C. § 552(a)(4)(viii)(II)(aa); *see also* 12 C.F.R. § 261.12(e)(3). In the event the agency provides notice to the requester of "unusual circumstances," and that it is not able to respond to the records request within the statutory

deadline, the agency must provide the requester "an opportunity to arrange with the agency an alternative time frame for processing the request." 5 U.S.C. § 552(a)(6)(B)(ii); *see also* 12 C.F.R. § 261.12(e)(3)(ii).

46. If an agency does not respond to a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. § 552(a)(6)(C)(i).

## CLAIMS FOR RELIEF

### Count I
### Failure to Comply with Statutory Deadlines in Violation of FOIA, 5 U.S.C. § 552(a)(6)

47. Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1 through 46, as if fully set forth herein.

48. Defendant failed to respond substantively to Plaintiff's July 19, 2024 Original FOIA Request within the time permitted.

49. More than 20 working days have passed since Plaintiff submitted his February 18, 2025 Revised FOIA Request.

50. Nearly a month has passed since FRB indicated it would respond substantively to the Revised FOIA Request.

51. Defendant did not provide a final determination within 20 working days of the Revised FOIA Request, nor did it contact Plaintiff with a claim that unusual circumstances exist.

52. Defendant did not meet its self-imposed April 1, 2025 deadline, either.

53. FRB has thus failed to timely make a determination on the Revised FOIA Request, in violation of FOIA. *See* 5 U.S.C. § 552(a)(6).

54. Plaintiff has constructively exhausted all administrative remedies required by FOIA as to the Revised FOIA Request. *See* 5 U.S.C. § 552(a)(6)(C)(i).

55. Plaintiff is being irreparably harmed by Defendant's violation of FOIA, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with FOIA as to the Revised FOIA Request.

### Count II
### Unlawful Withholding of Agency Records in Violation of FOIA, 5 U.S.C. § 552(a)(3)

56. Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1 through 55, as if fully set forth herein.

57. FOIA requires Defendant to process record requests and promptly provide the requested records or the reasonably segregable portion of records not subject to a FOIA exemption. *See* 5 U.S.C. § 552(a)(3)(B); *see also* 12 C.F.R. § 261.13.

58. However, Defendant has not provided Plaintiff any documents in response to the Revised FOIA Request, nor has it claimed that any responsive records are exempt from disclosure.

59. Therefore, FRB's acts and omissions for failing to produce records or claim applicable exemptions violate FOIA. 5 U.S.C. § 552(a)(3)(B).

### RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays that this Court:

 A. declare that FRB failed to make timely determinations on both the Original FOIA Request and the Revised FOIA Request, in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

 B. declare that FRB failed to promptly provide records responsive to the Revised FOIA Request, in violation of FOIA, 5 U.S.C. § 552(a)(3);

 C. order FRB to immediately conduct a reasonable search for all responsive records, as required by FOIA, 5 U.S.C. § 552(a)(3)(C);

D. order FRB to provide a determination immediately on the Revised FOIA Request, as required by FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

E. order FRB to promptly disclose to Mikula all responsive, non-exempt records, as required by FOIA, 5 U.S.C. § 552(a)(3);

F. award Mikula costs and reasonable attorneys' fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

G. grant such other relief as the Court may deem just and proper.

Dated: April 18, 2025

Respectfully submitted,

   */s/ Michael J. Schrier*
Michael J. Schrier (DC Bar No. 444693)
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006
Tel. 202-378-2313
Fax 202-378-2319
michael.schrier@huschblackwell.com

*Attorney for Plaintiff Jason Mikula*